J.R. Casillas
Peter F. Lacny
DATSOPOULOS, MacDONALD & LIND, P.C.
Central Square Building
201 West Main Street, Suite 201
Missoula, Montana 59802
Telephone:(406) 728-0810
Facsimile: (406) 543-0134
jrcasillas@dmllaw.com; placny@dmllaw.com
areiber@dmllaw.com; kwitt@dmllaw.com

*Attorneys for Plaintiffs*

CLERK OF THE
DISTRICT COURT
KRISTIE LEE BOELTER

2016 NOV 16 AM 9 31

FILED
BY _____
DEPUTY

# MONTANA THIRTEENTH JUDICIAL DISTRICT COURT
## YELLOWSTONE COUNTY

| | |
|---|---|
| ESTATE OF RICHARD DAVID RAMIREZ, by and through Personal Representative Julio Ramirez; RICHARD JORDAN RAMIREZ, by and through Conservator Julio Ramirez; and, JULIO RAMIREZ;<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BILLINGS, a municipal corporation of the State of Montana; OFFICER GRANT MORRISON; CHIEF RICH ST. JOHN; JOHN DOES 1-10; and CORPORATIONS A-J;<br><br>Defendants. | Cause No. **DV 16-1535**<br>Dept. No. **GREGORY R. TODD**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>120/130067 |

Plaintiffs, Estate of Richard David Ramirez, Richard Jordan Ramirez (a minor) and Julio Ramirez, allege and complain as follows:

## **NATURE OF ACTION**

1. This is a civil rights action arising from Defendants' wrongful shooting, use of excessive force, violation of policies and procedures, and negligence, resulting in the untimely death of Richard David Ramirez on April 15, 2014 in Billings, Yellowstone County, Montana. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of Montana including, but not limited to, §§ 27-1-501 and 27-1-513, M.C.A. Congress enacted the Civil Rights Act in order to protect the rights of Mr. Ramirez and others similarly situated that are guaranteed to all Americans by the Constitution. In this action, Defendants acted unreasonably, in the absence of good faith, and without due care thereby violating Mr. Ramirez's clearly established rights.

## JURISDICTION AND VENUE

2. Jurisdiction and venue are proper in this Honorable Court because the acts and omissions affirmatively alleged herein occurred in Billings, Yellowstone County, Montana.

3. § 2-9-301, M.C.A., does not apply and Plaintiffs are not required to first present their claims to the department of administration before filing this Complaint in district court.

## PARTIES

4. The Estate of Richard David Ramirez, by and through the Personal Representative, Julio Ramirez, brings this action against Defendants for the damages sought herein, including survivorship damages. Prior to his death, the decedent was at all times relevant a resident of Billings, Yellowstone County, Montana.

5. Richard Jordan Ramirez is the decedent's minor son. On October 17, 2016, the Montana 13th Judicial District Court (Hon. Russell Fagg; Cause No. DG 16-0001) entered an Order granting the Petition of Julio Ramirez for Appointment as Conservator for Richard Jordan Ramirez. Richard Jordan Ramirez, by and through the Conservator, brings this

action against Defendants for the damages sought herein, including wrongful death damages.

6. Julio Ramirez is the decedent's father. Julio Ramirez brings this action against Defendants for the damages sought herein, including wrongful death damages.

7. Defendant, City of Billings ("City"), is a municipal corporation organized and existing under the laws of the State of Montana. The City is a political subdivision of the State of Montana. The City is located in Yellowstone County, Montana. At all times relevant, the City was responsible under the laws of agency, vicarious liability and *respondeat superior* for all wrongful, negligent and/or other improper conduct, acts and/or omissions of the Billings Police Department ("BPD"), as well as its officers, agents, and employees. BPD is a law enforcement agency of the City.

8. Defendant, Grant Morrison, at all times relevant, was employed as a police officer with the BPD. At all times relevant, Defendant Morrison was acting within the course and scope of his employment. Defendant Morrison is sued in his individual capacity.

9. Defendant, Rich St. John, at all times relevant, was the Chief of Police at the BPD. As Chief of Police, Defendant St. John is a policy-making official for the BPD with the power to make official and final policy for it. At all times relevant, Defendant St. John was acting within the course and scope of his employment. At all times relevant, Defendant St. John owed his allegiance to the City of Billings and the BPD. Defendant St. John is sued in his individual capacity.

10. Defendants, John Does 1-10, are individuals with identities currently unknown which bear some or all of the liability associated with Plaintiffs' claims. It is Plaintiffs' belief that these fictitious Defendants participated or assisted in the performance of the wrongful acts and omissions described within this Complaint, although the full extent of their involvement is unknown at this time. Alternatively, these Defendants acted as principles or agents, actual or ostensible of other named Defendants in performing the wrongful acts and omissions described herein, although the full extent of their involvement is currently unknown. Further, one or more of the Doe Defendants were, at all times relevant, responsible for the hiring, screening, training, supervision, rehabilitation and discipline of other Defendants. If and

when the names and capacities of these Defendants have been ascertained, appropriate amendments will be sought and accordingly filed.

11. Defendants, Corporations A-J, are entities with identities currently unknown which bear some or all of the liability associated with Plaintiffs' claims. It is Plaintiffs' belief that these fictitious Defendants participated or assisted in the performance of the wrongful acts and omissions described within this Complaint, although the full extent of their involvement is unknown at this time. Alternatively, these Defendants acted as principles or agents, actual or ostensible of other named Defendants in performing the wrongful acts and omissions described herein, although the full extent of their involvement is currently unknown. If and when the names and capacities of these Defendants have been ascertained, appropriate amendments will be sought and accordingly filed.

12. Upon information and belief, each of the Defendants named herein were at all times relevant agents, servants, employees, partners, joint venturers, co-conspirators, and/or alter egos of the remaining Defendants, and in engaging in the acts and omissions alleged herein,

were acting within the course and scope of those relationships. Upon further information and belief, each of the Defendants herein gave consent, aided, and assisted each of the remaining Defendants, and ratified and/or authorized the acts and omissions of each Defendant as alleged herein; thus, each Defendant is jointly and severally liable for the damages caused by each other Defendant. All Defendants jointly engaged in tortious activity thereby resulting in the deprivation of constitutional rights.

## GENERAL ALLEGATIONS

13. Plaintiffs re-allege the preceding paragraphs as if fully set forth herein.

14. On or about Monday April 14, 2014, Mr. Ramirez got into a vehicle with Dustin Halverson, Crystal Jones, and Tom Black with the intent of locating Mr. Ramirez's girlfriend. Dustin Halverson drove the vehicle, Crystal Jones was the front passenger, Tom Black rode in the backseat directly behind Dustin Halverson, and Mr. Ramirez rode in the backseat directly behind Crystal Jones.

15. While driving to locate Mr. Ramirez's girlfriend, the passengers in the vehicle observed that it was being curiously followed by a BPD patrol car.

16. Thereafter, Dustin Halverson turned right onto State Street and subsequently made another right hand turn across the railroad tracks and into an alleyway behind a friend's house near 421 South 39th Street in Billings. As the vehicle was coming to a stop, the BPD patrol car, for the very first time, activated its overhead lights to initiate a traffic stop. It was later determined that the BPD patrol car was driven by Defendant Morrison.

17. Defendant Morrison's stop of the vehicle was unconstitutional because, *inter alia*, the driver did not commit and Defendant Morrison did not witness any traffic violations; no traffic or other violations were reported to Defendant Morrison; and, a criminal investigative stop was not justified because Defendant Morrison did not have reasonable grounds to believe that any person in the vehicle had committed or was about to commit a violation or crime.

18. Defendant Morrison alleges that he did not recognize or identify any person in the vehicle until after he initiated the traffic stop.

19. Defendant Morrison alleges that he called for backup while following the vehicle, but before initiating the traffic stop. Defendant Morrison further alleges that, for a variety of reasons, he did not consider the traffic stop "routine."

20. After initiating the illegal traffic stop, the vehicle driven by Dustin Halverson came to a complete stop. Defendant Morrison then quickly exited his patrol car with a flashlight and rapidly approached the front passenger side window of the vehicle where Crystal Jones was seated. Defendant Morrison placed his left hand on his firearm in its holster as he approached the vehicle.

21. Only approximately ten (10) seconds passed between the time the vehicle driven by Dustin Halverson came to a complete stop and the time that Defendant Morrison made contact with the occupants in the vehicle at the front passenger side window.

22. Defendant Morrison demanded that the passengers put their "hands up" and falsely accused Mr. Ramirez of "moving his hands around" thus allegedly making Defendant Morrison "nervous."

23. After Mr. Ramirez identified himself simply as "Richard," Defendant Morrison aggressively yelled for all of the passengers to "put

their fucking hands up right [then] on top of the seats." Defendant Morrison then notified dispatch that he had seized Mr. Ramirez and asked that "everybody step it up."

24. Defendant Morrison then used multiple profanities and repeatedly demanded that the passengers put their "hands up."

25. Defendant Morrison's primary focus was on Mr. Ramirez and he threatened to shoot him as he drew his firearm from its holster on his left hip and pointed it directly at Mr. Ramirez.

26. Before Mr. Ramirez even had time to comply with Defendant Morrison's demand, Defendant Morrison fired three (3) shots at Mr. Ramirez thereby striking him with bullets.

27. Mr. Ramirez was unarmed at the time and none of the other occupants in the vehicle possessed any weapons.

28. After shooting Mr. Ramirez, Defendant Morrison continued to scream profanities at Mr. Ramirez and threatened repeatedly to shoot him again. Defendant Morrison also demanded that Mr. Ramirez "get on the fucking ground." All the while, Mr. Ramirez was bleeding out from the prior shots, immobile, suffering in immense pain and

otherwise physically incapable of complying with Defendant Morrison's demands.

29. Defendant Morrison notified dispatch that shots were fired and inexplicably continued to demand that Mr. Ramirez "get out of the car" and "get down." Defendant Morrison again used a series of profanities in making his unreasonable demands.

30. Defendant Morrison's demands to "get out of the car" were solely directed at Mr. Ramirez, the only person who had been shot and was physically unable to comply.

31. Only approximately forty (40) seconds passed between the time the vehicle driven by Dustin Halverson came to a complete stop and the time Defendant Morrison fired shots at Mr. Ramirez.

32. As a direct and proximate result of the shots fired by Defendant Morrison and Defendants' illegal conduct, Mr. Ramirez died.

33. Before his death, Mr. Ramirez endured pain, suffering, disfigurement, fear, inhumane treatment, and emotional distress.

## COUNT 1 – 42 U.S.C. § 1983
### (Defendant Morrison and Does 1-10)

34. Plaintiffs re-allege the preceding paragraphs as if fully set forth herein.

35. By the actions and omissions described above, Defendants violated 42 U.S.C. § 1983 thereby depriving Plaintiffs of constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution, including: the right to be free from unreasonable search and seizure; the right to be free from excessive and unreasonable force; and, the right to be free from the use of unlawful, reckless, deliberately indifferent, and conscience shocking deadly force.

36. Defendants' wrongful conduct was committed knowingly, maliciously, and with conscious and reckless disregard for the rights and safety of Mr. Ramirez.

37. As a direct and proximate result of Defendants' acts and omissions as set forth herein, Plaintiffs sustained injuries and damages in an amount to be proven at trial.

38. Defendants' conduct entitles Plaintiffs to an award of punitive damages and penalties allowable under 42 U.S.C. § 1983 and § 27-1-221, M.C.A. Defendants' conduct was oppressive and they acted with complete indifference to Mr. Ramirez's safety and rights.

39. Plaintiffs are also entitled to costs and attorney's fees under 42 U.S.C. § 1988 and applicable Montana statutes.

# COUNT 2 – *MONELL CLAIM*
## (Defendants City, St. John, Does 1-10 and Corporations A-J)

40. Plaintiffs re-allege the preceding paragraphs as if fully set forth herein.

41. The violations of Mr. Ramirez's rights resulted from Defendants' municipal policies and customs which caused injuries beyond merely employing Defendant Morrison.

42. There is a causal connection – an affirmative link – between these municipal policies and customs and the deprivation of Mr. Ramirez's constitutional rights.

43. The unconstitutional actions and omissions of Defendants were taken pursuant to customs, policies, practices, or procedures of the City, BPD, and/or Defendant St. John, which were directed, encouraged, allowed, or ratified by Defendants, including, but not limited to: the use of excessive force; tolerance of the use of excessive force; failure to call and wait for backup; escalating situations that did not warrant escalation; failure to use appropriate and generally accepted procedures for apprehending suspects; unlawfully initiating traffic stops; failing to investigate or evaluate complaints or incidents involving excessive force; failing to investigate and discipline violations of constitutional

rights; encouraging or tolerating a "code of silence" among law enforcement officers whereby they refuse to provide adverse information against one another; tolerating or promoting inadequate, deficient and improper procedures for handling, investigating, and reviewing complaints of officer misconduct; failing to discipline officers who use excessive force or commit other civil rights violations; tolerating recurring instances of violent and fatal interactions with the public; failing to maintain a process for identifying and deterring excessive use of force or other civil rights violations; failing to adopt adequate policies to effectively prevent the unnecessary use of excessive force; failing to adopt and enforce adequate policies to "deprogram" officers following incidents involving deadly and/or excessive force and incidents resulting in death.

44. Defendants failed to properly screen, retain, review, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendant Morrison, and in so failing, acted with indifference to Plaintiffs' constitutional rights.

45. Defendants have approved, tolerated, and ratified the unconstitutional conduct of Defendant Morrison by finding his actions

in taking the life of Mr. Ramirez to have been justified and by failing to sanction or discipline Defendant Morrison.

46. The allegations set forth herein were the proximate cause of the deprivation of rights.

47. Defendants acts and omissions were malicious and carried out with conscious disregard for safety and rights.

48. Plaintiffs suffered damage by Defendants' acts and omissions in an amount to be proven at trial.

## COUNT 3 – NEGLIGENCE
**(All Defendants)**

49. Plaintiffs re-allege the preceding paragraphs as if fully set forth herein.

50. Defendants owed Plaintiffs a duty to act with reasonable care.

51. The duties owed by Defendants include, but are not limited to, the duty to: refrain from unnecessarily using excessive force; refrain from unnecessarily creating or escalating a situation where the use of excessive force might become necessary; refrain from abusing their authority; refrain from illegally initiating traffic stops; and, refrain from unlawfully violating constitutional rights.

52. In addition, Defendants City and St. John had a duty to use reasonable care in properly screening, investigating the background of, hiring, training, retaining, supervising, monitoring, evaluating, "de-programming," and disciplining its employees, agents, and law enforcement officers, including, but not limited to, Defendant Morrison.

53. Defendants City and St. John also had a duty to make, adopt, enforce, and act in conformance with policies, customs, and procedures that are lawful and protective of citizens' constitutional rights.

54. Defendants breached each of their duties as alleged herein.

55. Defendants' breach of their duties caused injuries and damages to Plaintiffs in an amount to be proven at trial.

## COUNT 4 – SURVIVORSHIP [§ 27-1-501, M.C.A.]
### (All Defendants)

56. Plaintiffs re-allege the preceding paragraphs as if fully set forth herein.

57. Defendant Morrison wrongfully killed Mr. Ramirez by unjustifiably discharging his firearm at him causing bullets to strike him.

58. Defendants City and St. John are responsible for the conduct of BPD, its employees and agents.

59. Mr. Ramirez survived the initial impacts of the bullets and lived long enough to experience pain, suffering, fear, anxiety, emotional distress, and disfigurement.

60. Mr. Ramirez suffered lost wages, including the reasonable earnings he would have earned during his life expectancy.

61. Mr. Ramirez suffered the expenses associated with his funeral and burial/cremation.

62. Defendants' acts and omissions resulted in damages to the Estate in an amount to be determined at trial.

## COUNT 5 – WRONGFUL DEATH [§ 27-1-513, M.C.A.]
(All Defendants)

63. Plaintiffs re-allege the preceding paragraphs as if fully set forth herein.

64. Plaintiffs, Julio and David Jordan Ramirez had a special relationship with Mr. Ramirez.

65. Plaintiffs Julio and David Jordan Ramirez were deprived of the society, companionship, support, care, aid, and protection they would have received from Mr. Ramirez had he not been wrongfully killed.

66. Plaintiffs Julio and David Jordan Ramirez suffered grief, sorrow, and mental anguish as a result of Mr. Ramirez's untimely and wrongful death.

67. Plaintiffs Julio and David Jordan Ramirez are entitled to an award of damages in an amount to be determined at trial.

## COUNT 6 – ASSAULT
### (All Defendants)

68. Plaintiffs re-allege the preceding paragraphs as if fully set forth herein.

69. Defendant Morrison assaulted Mr. Ramirez by intentionally threatening harmful or offensive contact against Mr. Ramirez under circumstances which created a well-founded fear on the part of Mr. Ramirez that Defendant Morrison intended to cause him death or serious bodily injury, and that he had the ability to carry out his threat.

70. Mr. Ramirez suffered damages in the form of fear, stress, anxiety and emotional distress as a result of Defendant Morrison threatening to harm him with his firearm.

71. The Estate is entitled to an award of damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs request the following relief against each and every Defendant, jointly and severally:

A. Compensatory damages for the Estate for survivorship in an amount to be proven at trial;

B. Compensatory damages for Plaintiffs Julio and Richard Jordan Ramirez for wrongful death in an amount to be proven at trial;

C. Punitive Damages under 42 U.S.C. § 1983 and § 27-1-221, M.C.A., in an amount to be proven at trial;

D. Reasonable attorney's fees and costs as allowed under state or federal law; and,

E. Such further relief as the Court may deem just and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated this 11th day of November, 2016.

DATSOPOULOS, MacDONALD & LIND, P.C.
*Attorneys for Plaintiffs*

_____
J.R. Casillas
Peter F. Lacny